UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KENYATTA DANIELS,

        Plaintiff,

v.

LYLE S. MINDLIN et al.,

        Defendants.

_____/

Case No. 2:19-cv-236

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### **Discussion**

#### **I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Chippewa County, Michigan. The events about which he complains, however, occurred while he was incarcerated at the Saginaw County

Correctional Facility (SRF) in Saginaw County, Michigan and the Thumb Correctional Facility (TCF) in Lapeer County, Michigan. Plaintiff sues MDOC Doctor Lyle S. Mindlin, Regional Medical Provider William Borgerding, and Registered Nurses Deborah J. Smith and Mary H. Hearing.[1]

Plaintiff suffers from elbow pain. Apparently he has suffered from such pain since an injury during 2009. (Grievance, ECF No. 1-9, PageID.28.) Plaintiff has tried different treatments over the years, including medications, steroid injections, massage, and range-of-motion exercises, to no avail. He has been subjected to a number of diagnostic studies, including many x-rays, an MRI, and an EMG study. These studies have identified arthritic changes in the elbow, a bone cyst, ulnar neuritis, and potential nerve conduction issues.

Having suffered for years, Plaintiff appears to have combed back through his medical record to find circumstances that might support a claim that Defendants have been deliberately indifferent to his serious medical need. He does not identify exactly what treatment he should have received or should receive now. He simply claims that Defendants have not fixed the problem and, as a result, Plaintiff has suffered years of pain.

Based on the excerpts of Plaintiff's medical record attached as exhibits to the complaint, it is apparent that each Defendant played some role in his care; however, neither Plaintiff's allegations nor the exhibits suggest that these Defendants have played any role in Plaintiff's care for several years. By way of example, Defendant Lyle S. Mindlin is a radiologist. He has read Plaintiff's x-rays and reported to Plaintiff's physicians on several occasions: January 7, 2011 (Radiology Report, ECF No. 1-5, PageID.20); June 28, 2012 (Radiology Report, ECF No. 1-7, PageID.24); September 14, 2012 (Radiology Report, ECF No. 1-15, PageID.44); November

---

[1] The spelling offered by Plaintiff is "Hearing." The documents attached to his complaint, however, indicate that the proper spelling is "Heering." The Court will use Plaintiff's spelling of the name.

5, 2013 (Radiology Report, ECF No. 1-10, PageID.31); and October 28, 2015 (Radiology Report, ECF No. 1-12, PageID.36). Dr. Mindlin is not the only person who read Plaintiff's x-rays or other diagnostic studies over the years. His findings are not at all inconsistent with the findings of those other doctors. He identified progressive arthritic changes over time and the development of a bone cyst; however, there is nothing in Dr. Mindlin's findings that might account for the extreme pain of which Plaintiff complained. Indeed, that pain appears to have a neural origin based on the MRI and nerve conduction studies.

There is no indication that Dr. Mindlin ever saw Plaintiff—only Plaintiff's x-rays. In each instance, Dr. Mindlin's reports were made to other healthcare providers who were directly involved in Plaintiff's care. Moreover, Plaintiff does not suggest that Dr. Mindlin had any involvement in Plaintiff's care after October 28, 2015.

Defendant Dr. Borgerding is named as a Regional Medical Provider. Plaintiff's only indication that Dr. Borgerding might have played some role in Plaintiff's care is a reference in a March 2013 Grievance Response which states: "The grievant alleges denial of proper medical treatment after the deferred request for an elbow brace/sleeve. The Regional Medical Provider suggests self massage and ROM exercises." (Grievance Response, ECF No. 1-9, PageID.29.) The response acknowledges that the brace was only deferred and encouraged Plaintiff to follow up if the massage and exercises did not improve his status. (*Id.*) There is nothing in Plaintiff's complaint or the exhibits that suggests that Dr. Borgerding played any role in Plaintiff's medical care after deferring Plaintiff's request for a brace pending an attempt at more conservative treatment.

Nurses Smith and Hearing responded to Plaintiff's requests for care for his elbow during 2013 and 2014. Plaintiff supplies kites seeking care and Smith's and Hearing's responses.

3

In each instance, the nurses scheduled Plaintiff for an appointment, if he wanted one. There are no allegations or exhibits that indicate that Nurses Smith or hearing played any role in Plaintiff's healthcare after November of 2014.

On March 8, 2013, Plaintiff filed a grievance regarding the failure of MDOC healthcare providers to provide appropriate care for his elbow. Certainly, by that date, Plaintiff was aware of the issues of which he now complains.

Plaintiff seeks compensatory and punitive damages exceeding $100,000.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

4

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### III. Statute of limitations

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]

Plaintiff's complaint is untimely. He asserts claims arising between 2009 and 2015. Plaintiff had reason to know of the "harms" done to him at the time they occurred. He was aware of the harms from the alleged deliberate indifference of Drs. Mindlin and Borgerding by the time he filed the grievance in the spring of 2013 and of any harms from the alleged deliberate indifference of Nurses Smith and Hearing by November of 2014. Hence, his claims accrued, at the latest, five years before he filed his complaint on November 6, 2019. Plaintiff filed his complaint well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

5

§ 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

"If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Stein v. Regions Morgan Keegan Select High Income Fund, Inc.,* 821 F.3d 780, 786 (6th Cir. 2016); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519-22 (6th Cir. 2008); *Buck v. City of Highland Park*, 733 F. App'x 248, 252 n.3 (6th Cir. 2018). Plaintiff's allegations show that relief against these Defendants for the conduct of which he complains is barred by the statute of limitations. Therefore, Plaintiff's claims against must be dismissed for failure to state a claim.

### IV. Deliberate indifference

Even if Plaintiff's claims were timely, his allegations do not suffice to state a § 1983 claim against these Defendants. To state such a claim, Plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff contends these Defendants were deliberately indifferent to his serious medical need. Such allegations implicate the Eighth Amendment's prohibition against cruel and unusual punishment. U.S. Const. amend. VIII.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be

7

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006);

*Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### A. Dr. Mindlin

Plaintiff's allegations and the documents he attaches to his complaint show that Dr. Mindlin did nothing more than read and report regarding x-rays of Plaintiff's elbow. Plaintiff contends that Dr. Mindlin should have known of Plaintiff's medical condition. That is certainly true—at least to the extent that condition was revealed through the x-rays. Plaintiff then states that "Defendant Mindlin disregarded Plaintiff's serious condition." (Compl., ECF No. 1, PageID.8.) Yet, other than suggesting that Dr. Mindlin was "hiding the damage through medical terms," (*Id*.), Plaintiff does not allege any facts to support an inference that Dr. Mindlin acted (or failed to act) with the requisite subjective state of mind. Plaintiff's allegations are entirely conclusory. At most, Plaintiff alleges that Dr. Mindlin was negligent in reading Plaintiff's x-rays and reporting the results. But, deliberate indifference requires more than mere negligence. Accordingly, Plaintiff has failed to state a deliberate indifference claim against Dr. Mindlin.

### B. Nurse Smith

Plaintiff's allegations and the documents he attaches to his complaint show that Nurse Smith did nothing more than respond to Plaintiff's written requests for medical care. On August 6, 2013, Plaintiff asked to see the Physician's Assistant because he was "losen [sic]

9

movement" in his left elbow." (Health Care Request, ECF No. 1-17, PageID.49.) Defendant Smith responded that Plaintiff would have to be seen by nursing first and then a referral would be made, most likely to the doctor, because Plaintiff had been seen by the doctor previously for his elbow. (Kite Response, ECF No. 1-17, PageID.48.) On June 2, 2014, Plaintiff asked to be seen for left elbow pain. (Health Care Request, ECF No. 1-17, PageID.51.) Nurse Smith scheduled an appointment for June 6. (Kite Response, ECF No. 1-17, PageID.50.) Plaintiff saw a medical provider then, but on June 9, again complained of elbow pain. (Health Care Request, ECF No. 1-17, PageID.53.) Nurse Smith scheduled an appointment for June 11. (Kite Response, ECF No. 1-17, PageID.52.) During September 2014, Plaintiff complained of elbow pain multiple times. Nurse Smith scheduled an appointment. (Kite Responses, ECF No. 1-17, PageID.55-56.) On November 13, 2014, Nurse Smith responded to Plaintiff's request for ice and a stronger pain medication, stating: "Ice details and increase in any pain medication are not given without being evaluated. Ice is only good for acute injuries (day of injury) not chronic conditions. Warm compresses may be of help. If you decide you want to be seen please rekite . . ." (Kite Response, ECF No. 1-11, PageID.33.) In Plaintiff's request for help, he was adamant that he did not want to be called out to be seen by healthcare. (Health Care Request, ECF No. 1-11, PageID.34.)

None of Plaintiff's allegations or documents support an inference that Nurse Smith acted (or failed to act) with the requisite subjective state of mind. Plaintiff's allegations are entirely conclusory. Accordingly, Plaintiff has failed to state a deliberate indifference claim against Nurse Smith.

### C. Nurse Hearing

Plaintiff's allegations and the documents he attaches to his complaint show that Nurse Hearing did nothing more than respond to Plaintiff's written requests for medical care. On April 2, 2014, Plaintiff asked to see a specialist to make sure the bone cyst in his left elbow was

10

not cancer. (Health Care Request, ECF No. 1-18, PageID.59.) Defendant Hearing scheduled Plaintiff to be seen on April 4, 2014. (Kite Response, ECF No. 1-18, PageID.58.) On September 20, 2014, Plaintiff asked to be seen by the PA or the doctor for left elbow pain. (Health Care Request, ECF No. 1-18, PageID.61.) Nurse Hearing informed Plaintiff he would have to see a nurse first and scheduled an appointment for September 23. (Kite Response, ECF No. 1-18, PageID.60.)

None of Plaintiff's allegations or documents support an inference that Nurse Hearing acted (or failed to act) with the requisite subjective state of mind. Plaintiff's allegations are entirely conclusory. Accordingly, Plaintiff has failed to state a claim for deliberate indifference against Nurse Hearing.

### D. Dr. Borgerding

Dr. Borgerding's only involvement in Plaintiff's care occurred on or about March 2, 2013, when Dr. Borgerding deferred the healthcare request for an elbow brace/sleeve for Plaintiff in favor of the more conservative treatment option of self-massage and range-of-motion exercises. Plaintiff's suggestion that Dr. Borgerding's deferral of the elbow brace/sleeve amounted to no treatment at all, ignores the many diagnostic studies and other treatments attempted for Plaintiff's elbow pain. As noted above, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. Plaintiff alleges nothing more here; accordingly, he has failed to state a deliberate indifference claim against Dr. Borgerding.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide

whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: December 19, 2019        /s/ Paul L. Maloney
                                Paul L. Maloney
                                United States District Judge